UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID GOLLES,

     Plaintiff,

v.                                                          Case No. 23-10633

FIVE STAR STORE IT, LLC, *et al.*                           Sean F. Cox
                                                            United States District Court Judge

     Defendants.

_____/

**OPINION & ORDER
ON PLAINTIFF'S SUMMARY JUDGMENT MOTION**

     Plaintiff filed this action against his former employer, alleging that he was placed on an involuntary and unpaid four-month leave, and then terminated, in violation of the Americans with Disabilities Act and Michigan's Persons with Disabilities Civil Rights Act, because his employer regarded him as disabled.  Discovery has closed and the matter is currently before the Court on Plaintiff's Motion for Summary Judgment.  The parties have briefed the issues and the Court heard oral argument on December 19, 2024.

     This is a somewhat unusual motion in that the plaintiff is bringing the motion, not the defendants.  In order to prevail on the motion, Plaintiff has to meet a high standard.  As explained, below, the Court concludes that he has done so and will grant summary judgment in Plaintiff's favor, as to liability only, with respect to his regarded-as-disabled disability discrimination claims under both statutes.  A jury trial will be necessary to determine damages and any other relief.

1

# BACKGROUND

## A.    Procedural Background

Plaintiff David Golles filed this action on March 17, 2023, asserting claims against Defendants Five Star Store It, LLC and Five Star Store It Corporate, LLC and three individual Defendants who have since been dismissed.

At this juncture, the operative complaint is Plaintiff's First Amended Complaint. In it, Plaintiff asserts the following counts: 1) "Violation of the Americans with Disabilities Act As Amended" (Count I); and 2) "Violations of the Persons with Disabilities Civil Rights Act" (Count II).  In both counts, Plaintiff alleges that Defendants violated the ADA and PWDCRA when, because they perceived him to be disabled, they: 1) forced him to take a four-month involuntary unpaid leave, even though he was able to return to work and offered to provide a doctor's note so stating; and 2) removed him from his District Manager position after that four-month involuntary leave and terminated him when he refused to accept a demotion.  Any trial in this case will be a jury trial.

This Court's November 15, 2023 Scheduling Order provides that discovery was to be completed by May 30, 2024, and that any discovery motions were to be filed no later than two weeks before discovery closes.  (ECF No. 19).

Although discovery closed back on May 30, 2024, for reasons unknown, Defendants did not depose Plaintiff.

This Court set a deadline of July 5, 2024 for dispositive motions.  Defendants did not file one.  On July 3, 2024, Plaintiff filed a Motion for Summary Judgment.  (ECF No. 27).  As the motion does not address damages, however, it actually is a motion seeking summary judgment as

to liability only.  Plaintiff submitted a number of exhibits in support of his motion.  He also complied with this Court's practice guidelines by preparing and filing a "Statement Of Material Facts Not In Dispute."  (ECF No. 27 at PageID.472-76).

Defendants filed a response brief opposing Plaintiff's summary judgment.  Defendants did not, however, submit any exhibits as attachments to their brief.  Thus, they submitted no evidence for the Court's consideration.  They also failed to respond to Plaintiff's Statement of Material Facts Not in Dispute, but included a "Counter-Statement of Facts," that directs the Court to: 1) allegations in the First Amended Complaint (ECF No. 9); and 2) evidence submitted by Plaintiff (Staudt Dep. Tr., ECF No. 27-2) and (one email, ECF No. 27-3).

## B.    Applicable Standard

Plaintiff's summary judgment motion is brought under Fed. R. Civ. P. 56.  It is somewhat unusual in that a plaintiff, rather than a defendant, is seeking summary judgment.  This matters because, as addressed in a recent Sixth Circuit decision, it impacts the applicable standard.  *See Trustees of Iron Workers v. Next Century Rebar,* LLC, 115 F.4th 480 (6th Cir. 2024).  The Sixth Circuit notes that a "more rigorous summary-judgment standard" applies "when the movant bears the burden of proof at trial," explaining:

> "[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Pineda v. Hamilton County*, 977 F.3d 483, 491 (6th Cir. 2020). This is because at trial a plaintiff typically bears the burden to prove each element, whereas a defendant need only "disprove" one element for the plaintiff's claim to fail. See 10A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (4th ed. 2016).
>
> "[W]here the moving party has the burden [of proof] ... his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis omitted) (quotations omitted); see also 11 JAMES WILLIAM MOORE, ET AL., MOORE'S Federal Practice § 56.40(1)(c) (3d ed.

3

2010) ("When the movant bears the burden of persuasion at trial, the movant must produce evidence that would conclusively support its right to a judgment after trial should the nonmovant fail to rebut the evidence."). But "[w]hen the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial," which can be done by identifying the absence of evidence. *Calderone,* 799 F.2d at 258–59 (quotations omitted). Put differently, when the moving party bears the burden of proof, their "initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quotations omitted)).

*Id.* at 488-89.

**C.    Relevant Evidence**

During all relevant times, Bernard Manies owned the Defendant Five Star entities and was the company President.  (Staudt Dep. at 9-11).  Beth Staudt was employed by Five Star as its Operations Manager for 11 years and reported to Manies.

Plaintiff David Golles began working for Five Start in August of 2016.  (Defs.' Answer to Am. Compl. at ¶ 7).  Golles began as a property manager, and reported to Staudt.  Golles received promotions until he obtained the position of District Manager, overseeing multiple self-storage facility sites.  (Defs.' Answer to Am. Compl. at ¶ 8; Staudt Dep. at 13 & 16-17).  Staudt testified that Golles reported to her during the entire time he was employed by Five Star.  (Staudt Dep. at 15).

When asked what her opinion was of Golles before June of 2020, Staudt testified as follows:

> A.    When David was in Highland he was – he was a great manager.  He was the best manager we ever had there, very on top of things. He's incredibly smart.  He is very business-like, but friendly with customers. He – He handled a lot of very difficult problems.
> Then when he helped – when I pulled him into the Michigan, the – I'm sorry, – the Kalamazoo properties, he was just

4

> so much help to me, and he just did an – an amazing job. He was a
> great, great employee, and we all liked David very much.
>
> Q.     And you and he interacted probably a lot then.  Right?
> A.     Yes, we did.

(Staudt Dep. at 18-19).

While working as his supervisor, Staudt had a friendly relationship with Golles and they talked about personal matters.  (Staudt Dep. at 17).  Because of that, when Golles became ill in June of 2020 and was treated at the hospital, he shared details about his condition with Staudt. (Staudt Dep. at 17-18).

Staudt, in turn, relayed much of what she learned from Golles, including various details about Golles's health and treatment, to Manies.  (Staudt Dep. at 25; Manies Dep. at 17; Pl.'s Ex. 3, various e-mails from Staudt to Manies about Golles and his treatment).

Staudt testified that Golles returned to work after that hospital visit in June of 2020.  (*Id.* at 26).  She testified that, while there may have been things Golles could have done better at that time, there was no formal warnings or reprimands, just mentoring to improve his performance. (*Id*. at 27).

In January of 2021, Golles began treatment for a newly diagnosed heart condition and took two weeks of medical leave for his recovery.   Golles's leave was known by the company and was approved.  (Defs.' Answer to Am. Compl. at ¶ 9).

At the end of that medical leave, Golles informed Staudt that he was taking a new medication and was ready to return to work.  (Pl.'s Ex. 4, Staudt's Affidavit; Pl.'s Ex. 3 at PageID.585).

Staudt testified that she spoke with Golles, over the phone, about his wanting to return to work.  (Staudt Dep. at 55).  Golles told Staudt that he was ready to return to work, that his doctor

had cleared him to return to work, and that he could provide a doctor's note to the company. (Staudt Dep. at 60-61 & 64; Staudt. Aff., ECF No. 27-5).  Staudt testified that she understood that Golles's doctors approved Golles returning to work.  (Staudt Dep. at 61).  Nevertheless, Staudt told Golles that the company / Manies wanted Golles to take at least four months off – unpaid – and after those four months the situation would be re-evaluated.  (Staudt Affidavit at PageId.589; Staudt Dep. at 60 & 83-84).  Golles was unhappy about that directive and again stated that his doctors had cleared him to return to work and that he could provide a doctor's note to the company.  (*Id*.).

Although Staudt had not personally seen Golles after the end of his two week leave, and had not reviewed any documentation from Golles's doctors, Staudt testified that it was her "personal opinion" that Golles was not ready to return to work and could not perform the duties of his job.  (Staudt Dep. at 83-87; Staudt Aff. at PageID.589).

Despite Golles's expressed protest, Staudt advised him that he was officially on a four-month unpaid leave, at the direction of Manies.  (Staudt Dep. at 88).

Manies testified that he learned about Golles's medical situation through discussions with Staudt and her emails.  Manies confirmed in his deposition that he directed Staudt to place Golles on the four-month leave of absence, although he had no medical information from Golles's doctors.  (Manies Dep. at 17).  Manies explained he gave that directive because "I wanted him to heal correctly."  (*Id*.)  Manies further testified:

> Q.     How did you pick four months as the time-period frame to be on leave?
> A.     It was on my heart.  How does that sound?  I don't know.

(Manies Dep. at 25-26).

At the end of the four-month leave of absence, Golles asked to be reinstated to his

position.  Manies testified that he would not return Golles to his position as district manager, but

offered him a different position, located in another part of the state, at a lower salary:

> Q.    Okay. . . But during that call you told him that he could not have the
>        position of district manager of Michigan back, but you were offering him
>        a facilities manager position in Kalamazoo.  Right?
> A.    Correct.
> Q.    Kalamazoo is a few hours from where had been living in Ann Arbor.
>        Correct?
> A.    Correct.
> Q.    Okay.  The position you were offering him actually paid less than his
>        previous position.  Right?
> A.    Correct.

(Manies Dep. at 28-29).

When Golles declined to accept the lesser position offered to him, Defendants terminated

his employment in a letter dated May 21, 2021.  (ECF No. 27-7; Staudt Affidavit, ECF No. 27-

5).

## ANALYSIS

"Under the Americans with Disabilities Act, your employer can't fire you because they

*think* you are disabled, even if, in fact, you are *not* disabled."  *Babb v. Maryville*

*Anesthesiologists, P.C.*, 942 F.3d 308, 311 (6th Cir. 2019) (emphasis in original).  That is

because the ADA prohibits "covered employers" from taking various discriminatory actions

against employees, such as discharging an employee, because the employer "regards" the

employee as being disabled.  42 U.S.C. §§ 12102(1), 121112(a); *Babb, supra.*[1]

---

[1]Michigan's PWDCRA also allows regarded–as–disabled claims.  *Chiles v. Machine Shop, Inc.*, 238 Mich.App. 462, 473, 606 N.W.2d 398 (1999).  The PWDCRA substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally resolve the plaintiff's PWDCRA claim.  *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012).  The parties have not directed this Court to any substantive differences for purposes of the claims asserted in this case.

Like *Babb*, this litigation concerns "the 'regarded as' prong of disability discrimination." *Babb*, 942 F.3d 308 at 318.  That is because Plaintiff asserts "regarded as" disability discrimination claims under the ADA and Michigan's PWDCRA.

**A.      The Threshold Condition For A Regarded-As-Disabled Claim Is Met.**

The "regarded as" prong of the ADA provides that an employee makes out a "regarded as" claim if the employee establishes that he or she has "been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*."  *Id.*; 42 U.S.C. § 12102(3)(A) (emphasis added).

To "state the threshold condition of a 'regarded as' ADA claim, an employee need only show that their employer believed they had a 'physical or mental impairment,' as that term is defined in federal regulations."  *Babb,* 942 F.3d at 319.  In other words, "[f]or a perceived-disability discrimination claim," the employee "need only show" that the employer "believed that he was disabled."  *Smyer v. Kroger Ltd. P'shp*,, 2024 WL 1007116 at *6 (6th Cir. 2024) Golles has done so here, as it is undisputed that Defendants required him to take a four-month, involuntary and unpaid, leave of absence because they concluded that he was not physically capable of returning to work after his medical leave of absence.


**B.      There Is A Potential Affirmative Defense, But Defendants Are Not Pursuing It In This Case.**

If the employee makes that showing, as an affirmative defense, the employer may rebut that showing "by pointing to objective evidence 'that the impairment' is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor."

*Babb,* 942 F.3d at 319 (citing 29 C.F.R. § 1630.15(f)).

The Sixth Circuit has recognized the "transitory and minor" limitation as an "affirmative defense that the employer bears the burden of proving." *Babb,* 942 F.3d at 319; *Harrison v. Soave Enter., LLC*, 826 F. App'x 517, 526 (6th Cir. 2020).

Here, Defendants did not raise this affirmative defense in their Answer and Affirmative Defenses to Plaintiff's First Amended Complaint. (*See* ECF No. 16 at PageID.410-411). Defendants also did not raise this affirmative defense in response to Plaintiff's summary judgment motion. Defense counsel confirmed, at the December 19, 2024 hearing, that Defendant is not pursuing the transitory and minor affirmative defense in this case.

**C.    Plaintiff Has Presented Sufficient Evidence Of Causation Such That He Is Entitled To Summary Judgment In His Favor As To Liability.**

If the employee "establishes that their employer 'regarded' them as disabled under the aforementioned standard, the employee must still show that their employer discharged them (or took some other form of adverse employment action against them) because of, or 'but-for,' their actual or perceived physical or mental impairment." *Babb*, 942 F.3d at 319. An employee such as Golles "may prove this causal connection one of two ways." *Id.*

First, the employee make seek to make the required showing by virtue of relying on direct evidence:

> First, an employee may "put [ ] forward direct evidence that [the employer] had a discriminatory motive in carrying out its employment decision." *Smith v. Chrysler Corp*., 155 F.3d 799, 805 (6th Cir. 1998); *see, e.g., Baum*, 764 F. App'x at 547 (employer told employee with a heart condition that he was being fired because of his 'health issues and doctor's appointments.").

*Babb*, 942 F.3d at 319.

Second, the employee may rely on "circumstantial evidence of discrimination under the

well-trod *McDonnell Douglas* burden-shifting framework." *Id.* If an employee proceeds under that circumstantial evidence approach, the first step is establishing a prima facie case of discrimination, the second element of which is showing that the employee is qualified for the position, with or without reasonable accommodation. *Babb, supra*, at 319-20. Thus, if an as-regarded ADA plaintiff proceeds under the circumstantial evidence approach, that employee "still must show that they are 'qualified' for a position." *Babb, supra*, as 320 n.8. Once the employee has established a prima facie case, the employer must then offer a "legitimate explanation for its actions." *Id.* If the employer does so, then the burden shifts back to the employee to show that the explanation is a pretext for discrimination. *Id.*

Notably, the "direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Hedrick v. Western Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004).

The motion at bar is Plaintiff's summary judgment, wherein Golles asserts that the Court should grant summary judgment in his favor under the *direct evidence path.*

In response to the motion, Defendant does not properly address the direct-evidence approach for a regarded-as ADA claim. Rather, Defendant proceeds as if Plaintiff were proceeding under the circumstantial evidence approach and asserts that Golles cannot meet the second element of a prima facie case, being qualified for the position, with or without reasonable accommodation. Defendant also strays into discussing its "legitimate, non-discriminatory reason" for terminating Golles but, again, that goes to the circumstantial evidence approach. Defendant further directs the court to a number of ADA cases, none of which involved a regarded-as disabled claim brought under the direct evidence approach. Such arguments do not

10

aid Defendant as Golles has clearly indicated that he is proceeding under the direct evidence approach and seeking summary judgment in his favor, as to liability, under that approach.

In *Babb,* the Sixth Circuit explained that an employee can prove the required causal connection (ie, that their employer took the adverse action because of, or but-for, their perceived disability) by presenting direct evidence.  It gave, as an example of such direct evidence in a regarded-as-disabled case, the employer in *Baum* telling an employee with a heart condition that he was being fired because of "his health issues and doctors appointments."  *Babb, supra*, at 320 (citing *Baum v. Metro Restoration Svs., Inc.*, 764 F App'x 543 (6th Cir. 2019).

In *Baum*, however, it was the defendant employer who moved for summary judgment. The district court granted summary judgment in favor of the defendant employer.  The Sixth Circuit reversed, because the plaintiff had presented sufficient direct evidence to allow a jury to find that the employer perceived the plaintiff to have a disability and fired him because of that perceived disability.  *Baum, supra*, at 547.

Here, Plaintiff Golles is the party bringing this summary judgment motion and he asks the Court to grant summary judgment in his favor.  Thus, as noted earlier, he has to meet a high standard in order for the Court to grant his motion:

> when the moving party bears the burden of proof, their "initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist*., 270 F.3d 1036, 1056 (6th Cir. 2001) (quotations omitted)).

T*rustees of Iron Workers v. Next Century Rebar,* LLC, *supra,* at *4.

To establish the requisite causal connection (ie, that Defendants took the adverse action of placing Golles on an involuntary, and unpaid, four-month leave because of his perceived

disability) Plaintiff has directed the Court to the following evidence.

In January of 2021, Golles began treatment for a newly diagnosed heart condition and took two weeks of medical leave for his recovery.   Golles's leave was known by the company and was approved.  (Defs.' Answer to Am. Compl. at ¶ 9).

At the end of that medical leave, Golles informed Staudt that he was taking a new medication and was ready to return to work.  (Pl.'s Ex. 4, Staudt's Affidavit; Pl.'s Ex. 3 at PageID.585).

Staudt testified that she spoke with Golles, over the phone, about his wanting to return to work.  (Staudt Dep. at 55).  Golles told Staudt that he was ready to return to work, that his doctor had cleared him to return to work, and that he could provide a doctor's note to the company. (Staudt Dep. at 60-61 & 64; Staudt. Aff., ECF No. 27-5).  Staudt testified that she understood that Golles's doctors approved Golles returning to work.  (Staudt Dep. at 61).  Nevertheless, Staudt told Golles that the company / Manies wanted Golles to take at least four months off – unpaid – and after those four months the situation would be re-evaluated.  (Staudt Affidavit at PageId.589; Staudt Dep. at 60 & 83-84).  Golles was unhappy about that directive and again stated that his doctors had cleared him to return to work and that he could provide a doctor's note to the company.  (*Id.*).

Although Staudt had not personally seen Golles after the end of his two week leave, and had not reviewed any documentation from Golles's doctors, Staudt testified that it was her "personal opinion" that Golles was not ready to return to work and could not perform the duties of his job.  (Staudt Dep. at 83-87; Staudt Aff. at PageID.589).

Despite Golles's expressed protest, Staudt advised him that he was officially on a four-

month unpaid leave, at the direction of Manies.  (Staudt Dep. at 88).

Manies testified that he learned about Golles's medical situation through discussions with Staudt and her emails.  Manies confirmed in his deposition that he directed Staudt to place Golles on the four-month leave of absence, although he had no medical information from Golles's doctors.  (Manies Dep. at 17).  Manies explained he gave that directive because "I wanted him to heal correctly."  (*Id.*)

This evidence is clearly sufficient to allow Plaintiff's regarded-as disabled claims to proceed to trial.  The question is whether this evidence is "so powerful that no reasonable jury would be free to disbelieve it."  The Court concludes that it is that powerful.

Accordingly, Plaintiff is entitled to summary judgment in his favor, as to liability only, with respect to his regarded-as-disabled disability discrimination claims under both the ADA and Michigan's PWDCRA.  A jury trial will still be necessary as to damages and other relief.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiff's Summary Judgment Motion is GRANTED to the extent that the Court RULES that Plaintiff has established liability as to his "regarded-as-disabled" disability discrimination claims under both the ADA and Michigan's PWDCRA.  A jury trial shall be held to determine damages and any other relief.

IT IS SO ORDERED.

Dated:  January 14, 2025                          s/Sean F. Cox
                                                  Sean F. Cox
                                                  U. S. District Judge


I hereby certify that on January 14, 2025, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

s/Emily Vradenburg
Case Manager

14